Good morning. May it please the Court, my name is Neil Phillip. I'm appearing on behalf of Scott Snyder, who is the appellant in this case, and I would ask to reserve three minutes for rebuttal. Okay. Just keep track and we'll try to help you and it counts down. Very good. Okay. Your Honors, this really should be a simple case. It's a case about life insurance proceeds from a policy that was purchased by Daniel Snyder. The dispute is between Appellant Scott Snyder and Appellee Paul Peterson. The District Court should be reversed in this case because it ignored the clear policy language when it concluded that the change of beneficiary form, that issue here, had to be received by the insurance company in order for it to take effect. Now, as I said in the brief... The issue, at least the issue it seems to me, is whether or not the policyholder directed that it be sent to the insurance company. Not so much the timing as to when it was received, but whether the policyholder directed that it be sent. Well, not exactly. That's more of an issue for substantial compliance. With respect to actual compliance, and both were at issue below, and I think that's where things got... Is it substantial compliance or is it evidence of intent of the decedent to make a change? Whether or not the decedent acted sufficiently to permit us to conclude that she intended the change to name your client as the beneficiary. Not under the language of the policy. With respect to the substantial compliance factors, you would be correct. Without regard to actual or substantial compliance, let's just look at Montana law. Doesn't Montana law focus upon evidence of intent of the decedent and what actions the decedent took to carry out that intent? The Montana courts have not specifically addressed the actual compliance factors. Evidence of intent under Montana law so far has only been addressed with respect to the substantial compliance test, and that's the Eschler case. You keep trying to push it into the box of actual versus substantial compliance. I'm asking a different question, and the question is whether or not we focus upon evidence of the decedent's intent. The fact that your client found among her papers a piece of paper indicating that she was thinking about changing the beneficiary only gets us halfway there, right? We have to really ask, did she really intend to name Mr. Snyder in place of her 8-year-old daughter, Alexandra? And the answer is no. The evidence of intent is not relevant under the language of the insurance policy. Under the language of the insurance policy, there's two things that have to happen. First, the insured must sign the change of beneficiary form. The second thing must happen. In the name that's listed on the insurance policy. Not under the language of the change of beneficiary form, under the change of beneficiary clause in the policy, section 3.35. Under the language of the policy, if she signs the form, and if that form is received by the insurance company, the change is effective. Do you have any case counsel under Montana law that says that a change can be effective when it's not either delivered by the decedent or delivered by someone acting on their directions? Well, the case I would point to, no. Can you answer my question? I do not have a case under Montana law that says that. Isn't that really the heart of your problem in this case? That someone could execute a form but not be sure if they're going to change their will? Until they deliver it or give it to someone saying, you deliver it, how do we know that they intend to change their policy? Well, this was a contract between Danielle Snyder and the insurance company. But you're saying her intent is irrelevant under the policy? Under the policy language, what they agreed to is once she executes the policy, if that form is ever received by the insurance company, it relates back to the date she signed it. Even if she doesn't deliver it? Even if she doesn't deliver it herself. So let's take an example. Let's say, hypothetically, she executed the form and she told someone right when she executed it, I'm going to sign it now, but I'm not sure I'm going to send it in. And she puts it in a drawer. And then someone takes it out of the drawer and sends it to the insurance policy, the insurance carrier. Then is your position that the beneficiary is changed? The beneficiary would be changed once it was received. Now, if the policyholder was still alive, obviously she could affect another change of beneficiary. But what you're talking about is what was discussed by the Indiana Supreme Court in Bowers and the Florida Court of Appeals in Schuster and Martinez. Those cases are directly on point. Schuster, more than any of them, that's the exact scenario we have here. What's important under Montana law is that the courts have said, and this is the Hegum case, that the courts in interpreting an insurance policy have to give effect to the plain meaning, the plain language of the policy. Well, here's what the policy says. I'm reading 3.35, change of beneficiary. Second sentence says, you may change irrevocable beneficiary, the you meaning the policyholder. That suggests to me that we have to know that she actually intended that this be done. And we know ordinary human behavior, sometimes you write a letter and then you don't send it because you're a little ambivalent. Sometimes, you know, you write stuff down and I'm sitting on it. And she sat on it for a couple of weeks and then she died unexpectedly. And we have nothing beyond the fact that she signed it and sat on it for two weeks to indicate that she intended actually to follow through with changing the beneficiary. Well, that's, Your Honor, is correct, that with respect to what she did with the change of beneficiary form. We do have evidence, however, through her sister, Shannon Stevenson, that she did intend to change the beneficiary. Suppose the evidence showed that after she signed the change of beneficiary form, she and Mr. Snyder had a huge fight and she put the change of beneficiary form in the drawer and decided not to send it in because she was mad at him. Would your position still be that she had effectuated a change in the beneficiary? If it was ever received by Valley Forge, yes, Your Honor. Okay. Even if the evidence showed that she put it in the drawer because she had second thoughts, she changed her mind? Again, I have to come back to the language of the policy. That's what the policy says and the courts that have addressed these issues have... But all that case law, every case that you cite, the decedent has in some form or another directed somebody else after the death, would you please deliver this? I don't believe that was the case in Schuster, but again, I have to come back to the point... What do you think was the case in Schuster? It's not Montana Law, but what's incorrect about what Judge Fletcher just said? In every case where a change was received after death, the deceased had instructed someone to send the form. I may be mistaken, but I believe Schuster was the same situation where the change of beneficiary form was found in a drawer. I'll check that during the break. Now, we've taken you a little bit past the three-minute mark you wanted to save. Why don't we let you save the rest of your time? We'll hear from the other side and then make sure you get a chance to respond. Very good. Thank you, Your Honor. Good morning, Your Honors. May it please the Court and Counsel, my name is Mike Black. I am the attorney for Paul Pedersen, who has appeared in this action on behalf of his minor daughter, Alex Pedersen, who was in his sole custody. Counsel, why under your theory is delivery important? Delivery by the decedent or someone acting under her instructions? It's not like one of those law school hypotheticals where someone had to deliver a peppercorn or whatever. I believe it goes to the fundamentals of contract law and the fundamentals of insurance law. In order to effectuate any modification of an existing contract. If you can keep your voice up and articulate a little better, it would be helpful to me. Talk to the microphone. And I apologize because I tend to talk fast and I mumble. That's going to work now that you've moved. More than one court reporter has informed me. Not the talk fast, it's the mumble. Yeah. What we're talking about is the fundamental precepts of both contract and insurance law. In order for a party to a contract, to amend or modify the contract, they at least have to consent to the terms. And that's black letter law. And under insurance law, in Montana in particular, the reasonable expectations of the insurer are something that need to be taken into account. And so delivery of some sort is required because that demonstrates first the intent of the insured to change the policy, of which she is the sole contracting party other than the insurance company. And it also demonstrates that she consents to a prior act that she may want to validate. And in that sense, I think that Judge Haddon was right on. I mean, really what we're talking about here is a policy provision that effectuates the mailbox rule. And Judge Haddon, I mean, come on, say it. I mean, constructive delivery to this insurance company is really what's at issue here. There is no evidence. So, Mr. Buck, is your interpretation of Judge Haddon's ruling not that he meant to suggest that a delivery after death was never enforceable, but that this case had no evidence that she had directed or intended to deliver the change of beneficiary form? Exactly, Your Honor. I think that a perfect example is if a party decided to change the beneficiary and they put it in the big blue mailbox out on the corner. And unfortunately, while walking across the street, they get hit by a car and die. It isn't actually received by the insurance company until after the death, but it should be effective because clearly the insured demonstrated a desire to change the beneficiary. That's the type of situation I think is covered by this. And it certainly, if that type of situation happened here, we wouldn't be here today. Clearly, none of that happened while the insured was alive. We don't know why whatever she started wasn't completed. We don't know why she didn't send it. And that's exactly the point that the Montana Supreme Court cautioned against in the Eschler case. The whole approach to try and say that this is an actual compliance case without considering substantial compliance, to me, turns everything on its head. Because in order to have actual compliance, I think you have to have at least substantial compliance. The party has to determine to change the beneficiary. And there's absolutely no evidence here that this lady intended to do it. Do we have any evidence? I think I know the answer to this, but I want to ask it anyway. Do we have any evidence about the circumstances under which she signs the change of beneficiary? We do. We have some conflicting evidence. What we have is we have evidence from the notary who notarized the second page of the two-page form. The first page is typed on apparently an old typewriter. No handwriting of the insured. And the notary would not even verify that the typing on the top of the second page was this person's handwriting or was typed there when it was notarized. And the notary issue is very interesting because if you look at the instructions for the change of name form, the change of beneficiary form, there was no reason to have a notary unless she was signing under a different name under the policy. And we know that she was using her prior name for some purposes. And if she wanted to effectuate the change, let's assume that she signed it and this is the document she signed on December 30, 2005 while sitting in a bank in Havre, Montana. The post office is three blocks away. She's got a driver's license. All she has to do is photocopy that driver's license, put it all in the mailbox, and we wouldn't be here today. But for some reason it wasn't done. We don't know. And it's the trying to inquire into what we don't know and can't know that the Montana Supreme Court has discouraged us from doing. I mean, really what we have in Montana is an objective test with some very narrow exceptions. And I think that Judge Haddon nailed it. I mean, if you do not have the ability to effectuate the change that you've determined to make,  but here we have a lady who had 16 days. She delivered mail for a living. She was sending stuff off by mail, you know, the day she passed away. There was nothing that prevented her from doing this. What's the conflict with regard to the notary signature? There's some suggestion in the briefing that the notary had recanted or disavowed her signature. Signature? Can you help me understand? I can't help you understand. To this day I don't understand why Snyder's counsel deposed this notary because they had an affidavit from her purporting to authenticate the change of beneficiary form. Okay. And then they take her deposition. What did she say on deposition? She said, I can't authenticate this document. All I can authenticate is my notary stamp. I don't know what the first page said. I don't know that there was typing on the second page. So I have no independent recollection of Ms. Snyder coming to see me on December 30, 2005 to notarize this form? Well, she had some recollection that she showed up with her daughter, which was impossible, because they were on their way to Great Falls to pick up the daughter. She couldn't remember what she looked like. She had a new driver's license with her new name, Snyder, which is absolutely clear. It had been issued a few weeks before. But she put down in her notary log that it was Pedersen who signed it. But clearly, the documents don't add up. And when this notary was put under oath, she would not authenticate the document anymore, which is what the affidavit said. She couldn't testify that I asked her for her driver's license to verify her identity? She did, and she showed up with the Snyder driver's license, but her notary log said it was Pedersen. It didn't make any sense, Your Honor. And that's one of the many curious things about this case. And I understand the argument of Mr. Snyder regarding credibility and intent and those sorts of things. But one of the things we started out with is we have this change of name form, and all you have to do is copy your driver's license and send it with a change of name form. Eleven days after she passes away, Mr. Snyder goes and obtains a certified copy of the marriage certificate and sends it in with a change of name form to effectuate the signature on the change of beneficiary form. Well, initially he denied doing that and said that she did it. Well, all you have to do is look at the certification stamp and the certified mail records to demonstrate that that isn't true. And the clerk of court actually recalled him coming in and had a record, and that's the record. So there are some curious issues here, but I don't think we even have to get to any of those. See, did either party ask the district court to certify the issue under Montana law to your state Supreme Court? No, Your Honor, they didn't. And had I lost, I probably would have asked. Typically that's the only time that I've ever done that. I am absolutely comfortable with what Montana Supreme Court would do here, and I believe that this court has the power to do that. And I have not researched that, but I wouldn't be uncomfortable if he chose to do it. I think the Montana law is clear. Well, we have had mixed results. Sometimes they say no when we send them a certified question. We tried in one case three times, and they turned us down every time. The labyrinth of the inner workings of the Montana Supreme Court is a mystery to many of us. In contrast to the Ninth Circuit, that's crystal clear. Well, this is the first time I've had the opportunity to argue in front of the Ninth Circuit, and I'm happy to be here. But I'm absolutely certain what the Montana Supreme Court would do, and that would be to rule as Judge Haddon did. So unless there are any further questions of the panel, I don't think I have much more to add. Okay. Thank you, Your Honor. I think that the court should be affirmed in all respects. Okay. Thank you. Response? You've saved a little over a minute and a half. Thank you, Your Honor. First, in answer to your question, you are correct. The three cases that I cited all involve someone requesting that the form be sent in. Yeah, and in fact, I went back and I just looked up the Schuster case. The lawyer does that at the direction of the defendant. But as the Bauer court indicated, evidence of intent is relevant. The substantial compliance issues are relevant when the plain language of the policy says that you have to fill out the form and that the form has to be received by the insurer. But the problem we have here is you have no proof, once the form reaches the drawer, of what the decedent wanted to have done with the form. If she had said to her sister, you know, would you send this in for me, or if anything happens to me, please send this in, you'd have, I think you'd be there, but you don't have that evidence. That's true, but we do have, and the Montana Supreme Court, given its emphasis on the policy language, which Judge Haddon, with respect to him, Judge Haddon ignored, the Montana Supreme Court has said you can't rewrite the language of the policy. Yeah, but the policy says you, like they say you, the decedent, you may do it, which strongly suggests to me that that means we have to know that the decedent intended to do it. And just putting it in the drawer and not sending it in, particularly when the effect of the change that's put in the drawer and not sent, would be to take away the money from the natural, quote, in the old-fashioned phrase, natural object of her bounty. I just don't see that there's enough evidence under the law of any state, let alone Montana, that you, that is to say you, the decedent, intended to change the beneficiary. Understood, Your Honor. I see my time is out. Would you answer one last question for me? Certainly. When did the irrevocable trust in favor of Alexandra, when was it established? I believe it was first established in 2006. So after the litigation commenced? Right. Thank you. And that's in effect now. All right, thank you. Thank you both for the argument. I hope you enjoy your time in Seattle. Just to make people from Montana feel right at home, we've arranged for some cold weather for you. The case of Snyder v. Valley Forge Life Insurance is now submitted for decision. Thank you for your helpful arguments. The next case on the argument calendar is St. John's Organic Farm v. Gem County Mosquito Abatement District.
judges: Fletcher, Gould, Tallman